IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRAN PERKINS, #B89826,           )
                                   )
                Plaintiff,         )
                                   )
        vs.                        )        Case No. 3:25-cv-01851-MAB
                                   )
C/O NEWTON, C/O NIPPE,             )
WARDEN BARWICK, LT. JOCKICH,       )
LT. JOHNSON, C/O WHEAT,            )
C/O MINTON, C/O CORRASCO,          )
C/O HANEY, C/O THOMPSON,           )
and C/O HOWARD,                    )
                                   )
                Defendants.        )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Darran Perkins, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights during his imprisonment at Pinckneyville Correctional Center ("Pinckneyville") (Doc. 1). He asserts that Defendants subjected him to unsanitary conditions of confinement (Doc. 1, pp. 6-15).

The Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims.[1] 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally

---

[1] The Court has jurisdiction to screen the Complaint based on Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by the Illinois Department of Corrections to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

1

frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

A review of the Complaint reveals the following allegations:  On August 27, 2024, Plaintiff and his cellmate Frye were moved to Cell 16 in Pinckneyville's 3 House, D Wing (Doc. 1, p. 6). They immediately discovered the cell was filthy, with what appeared to be feces smeared on the walls, toilet, sink, chuckhole, and vents. They asked Defendant Wing Officer C/O Newton for emergency cleaning supplies (mop, bleach/disinfectant, and protective gloves). Newton refused to inspect the cell or provide supplies, saying, "you'll catch Hepatitis before getting anything now." *Id.* Frye tried to clean the floor with a sock and vomited when the feces got onto his hand.

From August 27, 2024 to September 9, 2024, the cell's toilet was clogged with tissue, urine, and feces. Plaintiff had to ask officers to let him out of the cell to use another bathroom but was often denied, particularly when the prison was on a lengthy administrative lockdown. Frye placed a torn shirt over the toilet to stop some of the odor. On September 3, 2024, Plaintiff told Defendant C/O Thompson the toilet was stopped up (Doc. 1, p. 9). Thompson told them to flush the toilet – when they did, the toilet overflowed onto the cell floor. According to Plaintiff, Thompson refused to provide cleaning supplies or a plunger. On September 4, 2024, Plaintiff wrote to Warden Barwick and the placement office explaining the unsanitary conditions and the denial of cleaning supplies or a move to a different cell (Doc. 1, pp. 7-9). He received no response.

On September 4, 2024, Plaintiff and Frye asked C/O Nippe for cleaning supplies,

2

telling him they had been in the cell in those conditions for almost two weeks (Doc. 1, p. 9). Frye told Nippe, "This cell was bogus and Newton knew it and he [is] retaliating against us now for writing grievances and calling him a racist a** pig!" *Id.* Nippe laughed and said, "Look how far that went;" then left without providing anything to clean the cell. On September 8, 2024, they showed C/O Wheat the clogged toilet and asked for a new cell or disinfectant, mop, and gloves (Doc. 1, p. 10). Wheat responded, "you pissed Newton off, I'm not getting involved." *Id.* The toilet was finally repaired on September 9, 2024. *Id.*

Plaintiff and Frye continued to request cleaning supplies or a new cell assignment from multiple officers without success. Between September 3, 2024 and October 3, 2024, Officers Nippe, Newton, Haney, Thompson, Howard, Wheat, and Minton, and Lieutenants Jockich and Johnson all refused Plaintiff's requests for cleaning supplies or a different cell (Doc. 1, pp. 7-12). According to Plaintiff, Lt. Jockich told him, "You did that to yourself the way you run your mouth." (Doc. 1, p. 10). Lt. Johnson told Plaintiff to write a grievance, and retaliated against Plaintiff, along with Newton, for snitching on him (Doc. 1, p. 12).

On October 4, 2024, Barwick denied Plaintiff's grievance over the conditions in Cell 16 (Doc. 1, pp. 12-14, 16-18). Nothing had been done about the cell conditions, so on October 15, 2024, Plaintiff "banked" himself by moving his property out of the cell without authorization. He was put on suicide watch and then sent to solitary confinement/segregation (Doc. 1, p. 13).

Plaintiff seeks monetary damages (Doc. 1, p. 31).

3

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

**Count 1:** **Eighth Amendment cruel and unusual punishment claim against Defendants for confining Plaintiff in an unsanitary cell contaminated with human waste (Cell 16 in 3 House, D Wing, Pinckneyville) from August 27, 2024 until at least October 4, 2024.**

**Count 2:** **First Amendment retaliation claim against Defendant Newton for placing Plaintiff in the unsanitary cell, and against Newton, Nippe, Wheat, Jockich, and Johnson for keeping Plaintiff in that cell and refusing to provide him cleaning supplies, in retaliation for Plaintiff's grievances/complaints against Newton.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Preliminary Dismissal

Plaintiff includes C/O Corrasco among the listed Defendants, but he fails to mention this individual in his statement of claim or describe what Corrasco allegedly did to violate his constitutional rights. (Doc. 1, pp. 3, 6-15). Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v.*

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

*Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). A plaintiff is required to associate specific defendants with specific facts and claims so defendants are put on notice of the claims brought against them and can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Because Plaintiff has not articulated a claim against Corrasco, the Court must dismiss Corrasco from the case without prejudice.

**Count 1**

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He must also sufficiently plead that the defendant exhibited deliberate indifference to a substantial risk of serious harm to the inmate, despite the defendant's knowledge of the conditions. *Farmer*, 511 U.S. at 837, 842. For a defendant to be personally liable under § 1983, the individual "must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005).

Prolonged exposure to a clogged toilet filled with feces and urine and its stench can create inhumane, unconstitutional conditions. *See Hardeman v. Curran*, 933 F.3d 816, 823-24 (7th Cir. 2019). Likewise, forcing a prisoner to stay in a cell covered in feces may be a constitutional violation. *See Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (finding an inmate's conditions of confinement violated the Eighth Amendment where, among other things,

that inmate was held in a cell that was covered in feces for four days); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). And "unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief." *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (citing *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007)).

Plaintiff describes objectively serious deprivations in the Complaint. He lived with a clogged and nonfunctional toilet for over two weeks and was forced to stay in the cell for at least six weeks with the floor, walls, and other surfaces smeared with feces and no way to clean or sanitize the cell. He alleges he told Newton, Nippe, Barwick, Jockich, Johnson, Wheat, Minton, Haney, Thompson, and Howard about the filthy and contaminated cell and begged for cleaning supplies. However, he claims those individuals failed to take any remedial action. The Complaint sufficiently states an Eighth Amendment claim for unconstitutional conditions of confinement. Accordingly, Count 1 will proceed against Newton, Nippe, Barwick, Jockich, Johnson, Wheat, Minton, Haney, Thompson, and Howard.

### Count 2

Prison officials may not retaliate against inmates for exercising their First Amendment rights to file grievances, lawsuits, or otherwise complain about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). To state a retaliation claim, a prisoner must allege that he engaged in constitutionally protected activity and that prison officials took adverse action against him because he engaged in the protected activity. *Hawkins v.*

*Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff claims he wrote grievances against Newton, who retaliated by placing him in the contaminated, filthy cell. Newton then allegedly refused to provide cleaning supplies or move Plaintiff to a different cell. The alleged comments made by Nippe, Wheat, Jockich, and Johnson suggest they were aware of Newton's retaliation and went along with it by refusing to intervene or get cleaning supplies for the filthy cell. Accordingly, the retaliation claim in Count 2 will proceed against Newton, Nippe, Wheat, Jockich, and Johnson.

## OFFICIAL CAPACITY CLAIMS

Plaintiff raises claims against each defendant in his or her individual and official capacities. Claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Therefore, the official capacity claims against the individual defendants are dismissed without prejudice.

## DISPOSITION

The Complaint states colorable claims in Count 1 against Newton, Nippe, Barwick, Jockich, Johnson, Wheat, Minton, Haney, Thompson, and Howard, and in Count 2 against Newton, Nippe, Wheat, Jockich, and Johnson. Defendant Corrasco is **DISMISSED** from the action without prejudice.

The Clerk shall prepare for C/O Newton, C/O Nippe, Warden Barwick, Lt.

Jockich, Lt. Johnson, C/O Wheat, C/O Minton, C/O Haney, C/O Thompson, and C/O Howard: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted.

*See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: July 1, 2026**

*Mark A. Beatty*

**MARK A. BEATTY**
**United States Magistrate Judge**

9

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take 90 days or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.